IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.  Criminal No. 09-320

HARDY CARROLL LLOYD

<u>GOVERNMENT'S MEMORANDUM IN SUPPORT OF SENTENCING</u>

<u>INTRODUCTION</u>

Defendant Hardy Lloyd was released from custody on July 21, 2017 after serving a 14-month period of incarceration based upon his violation of supervised release. He quickly reoffended, and the Probation Office filed its first Petition alleging new supervised release violations on September 15, 2017 and requested an arrest warrant. (Docket No. 109). The Petition alleged that the defendant had violated his computer monitoring conditions by accessing unmonitored computers at local libraries and also that he had made false statements to his Probation Officer in response to proper inquiries.

The arrest warrant was served on September 15, 2017 and the Probation Office conducted a search of the defendant's residence. The search uncovered dangerous weapons in the possession of the defendant which he was not permitted to possess. Therefore, a Supplemental Petition which included this third violation was filed on September 15, 2017. (Docket No. 112). A Second Supplemental Petition (Docket No. 121) and a Third Supplemental Petition (Docket No. 133) were filed to clarify the charges.

The parties submitted a Stipulation, which the Court approved, that the Transcript and Exhibits from the Preliminary Hearing held before United States Magistrate Judge Robert C. Mitchell on September 26, 2017 would be admitted for purposes of this Honorable Court's Final Hearing on Revocation which is scheduled for December 12, 2017. The Court ordered the parties

to identify and submit any additional exhibits and/or witnesses which the parties intended to offer for purposes of determining whether the violations had been proven. In response, the government submitted a copy of a page from a website offering the "spade push knife" for sale and the defendant offered photographs taken on the day of the search showing the pocket knife seized from the defendant in a sheath. The government believes that these exhibits, with some explanation from counsel, will close the record with respect to the proof of violations.

## THE VIOLATIONS

The government submits that proof adduced is sufficient to prove all of the alleged violations:

1) The defendant can clearly be seen in photographs from the Dormont and Mt. Lebanon libraries using their internet-accessible computers. Further, he was able to order a "fighting stick" over the internet which transaction did not appear on his monitored device. Therefore he had accessed unmonitored computers to access the internet;

2) When questioned by his Probation Officer, he denied any involvement in local protests, yet he can clearly be seen yelling "White Power!" to protestors in Mt. Lebanon regarding the Charlottesville incident. He also denied being on the campus of Carnegie-Mellon but video surveillance shows him in the campus bookstore. He also denied leafletting, but, again, video surveillance reveals that he placed racist literature on a vehicle in the Shadyside area;

3) Although his terms of supervised release prohibit his possession of "dangerous weapons," Probation Officers located in his residence a bat taped with duct tape, a spade push knife, a hatchet, a lock blade knife[1] and a "fighting stick" capable of smashing a car windshield.

---

[1] The government does not believe that the lock bladed knife meets the definition of a Prohibited Offensive Weapon under Pennsylvania law. See 18 Pa.C.S.A. ¶908. Therefore, although the Probation Office's Violation Worksheet alleged a Grade B violation, the government agrees with the defense that all violations are Grade C violations.

Based upon the evidence submitted, the government respectfully requests that this Honorable Court find that all violations have been proven, and order that the term of supervised release be revoked.

## THE APPROPRIATE SENTENCE UPON REVOCATION

At the time of his arrest on the instant violations, the defendant was serving a 22 month term of supervised release. Due to the defendant's recidivism, lack of compliance with the orders of the Court, and the nature of the violations, the government submits that he should be sentenced to the full period of incarceration of 22 months.

A. This is the Defendant's Second Revocation

The defendant was convicted of possessing a firearm as a convicted felon by guilty plea on April 12, 2010. On August 3, 2010, he was sentenced by Judge Diamond to 30 months imprisonment, to be followed by three years of supervised release. Defendant was released to supervision on August 25, 2015.[2] Eleven months later, on July 16, 2016, the Probation Office filed a Petition alleging that he was using an unmonitored computer to access Facebook and post threats against the police, and that he had been charged by the Pittsburgh Police with harassment. On August 1, 2016, the Probation Office conducted a search of his apartment and found long knives, cans of Mace, and most importantly, a blackjack, which is a Prohibited Offensive Weapon under Pennsylvania law. Judge Diamond subsequently revoked his supervision and sentenced him to 14 months in prison to be followed by 22 months of supervised release.

In the instant matter, he was released from Renewal on July 21, 2017, and *within two months* he had committed the series of violations rehearsed above. Relatively few defendants

---

[2] The defendant's federal sentence did not commence on August 3, 2010. Rather, he was returned on a writ to state custody and faced state proceedings regarding a probation violation. This explains why he was not released from federal custody until August 25, 2015 on his 30 month federal sentence.

3

violate their supervised release within the first year of supervision, as Lloyd did in 2016, and now, after serving 14 months in prison, he wasted no time in committing more and varied violations. The only reasonable conclusion to be drawn is that Lloyd has little regard for complying with the terms of his supervision or working in good faith with his Probation Officer. The 14 months in prison on his first revocation apparently made little, if any, impression on the importance of full compliance with the terms of his supervision.

      B.  The Nature of the Violations is Particularly Troubling

On August 3, 2017, Lloyd's Probation Officer reviewed with Lloyd the Request for Modifying the Conditions or Term of Supervision with Consent of the Offender. This document permitted Lloyd to access the internet with certain restrictions. Lloyd objected to the conditions restricting his access to web sites involving "extremism" and "hate groups." In an attempt to work with Lloyd and to avoid any First Amendment issues, the Probation Officer agreed to drop those terms and keep only the term "terrorism."' Transcript of Preliminary Hearing held on September 26, 2017 (hereinafter "Tr.") at 5-6. On August 8, Lloyd signed the revised Request for Modification after his Probation Officer, Patrick Sumansky, again reviewed it with him. See Exhibit 1 admitted at the Preliminary Hearing. Tr. at 7. Exhibit 1 was filed with the Court on August 9. Id.

In Exhibit 1, Lloyd agreed to abide by the Court's Computer Restrictions and Monitoring Program. On August 10, 2017, U.S. Probation Officer Peter Gawlinski specifically reviewed the Program Rules with Lloyd, and explained to Lloyd that he could not access any unmonitored computers. Lloyd asked Gawlinski whether he could go to the library and Gawlinski replied that he could go to a library but could not use the computers. Tr. at 8-10. Lloyd signed the Computer

Restrictions and Monitoring Program Rules.  See Exhibit 2.   The only monitored computer which Lloyd was permitted to use was his Samsung cell phone.   Tr. at 10.

Yet, on August 17, *only a week later*, he was caught using the computer at the Mt. Lebanon library (Tr. at 15-16), and then again on August 28th at the Dormont library (Tr. at 17-18).  On September 1, he accessed the BUDK.com web site through an unmonitored computer (he ordered the "fighting stick" from BUDK.com) (Tr. at 19-23) and on September 10, he accessed YouTube on an unmonitored device to watch 62 videos of women being rendered unconscious with chloroform and/or bound and gagged (Tr. at 24-25) .

It is obvious to all that Lloyd never had any intention of complying with the condition that he access the internet only through a monitored computer.  Of course, it is not surprising that he would not want his Probation Officer to know that he was purchasing dangerous weapons on the internet or accessing disturbing and violent videos.   The whole purpose of the monitoring conditions is to ensure that the supervisee conforms his conduct to the law, is making progress toward being a productive citizen, and is avoiding violence.  What possible reason could there be for Lloyd to watch dozens of videos showing violence toward women?   While the mere fact of watching such videos is not a crime, it may be considered by the Court, and should be, when the Court assesses whether the supervised release conditions are working to rehabilitate Lloyd or not.

Similarly, a supervisee who is not truthful with his Probation Officer is almost impossible to supervise.   The Probation Office cannot monitor or surveil a defendant 24 hours a day.  The Probation Office relies upon honest reporting by the defendant, and truthful responses to inquiries. Lloyd lied about a multitude of things, including the Mt. Lebanon protest (Tr. at 25-28), placing racist leaflets on cars in Shadyside (Tr. at 32-35) and his presence on the Carnegie-Mellon

5

University campus (Tr. at 28-32).  He cannot be trusted, but rather has shown himself to be evasive and deceitful.

Lloyd is also determined to arm himself.  When he could not possess firearms, he obtained Mace and a blackjack.  After serving 14 months on that violation, he ordered a fighting stick sometimes sold under the guise of being a walking stick, a plastic spade push knife advertised as a weapon but appearing to be an innocent key chain item,[3] and taped up a wiffle bat to make it into a weapon.  The point is not that these items are as dangerous as firearms – they are not – but that Lloyd is determined to push the envelope, and go beyond what is allowable.  Rather than complying with conditions, he is looking for every loophole or opening to do what he wants.  But Lloyd, as a federal felon, has forfeited the right enjoyed by law abiding Americans to defend themselves with firearms and dangerous weapons.

Lloyd has long espoused racist, white nationalist views.  Although repugnant, his views are protected by the First Amendment.  However, his attitudes toward others in society, viewing fellow citizens who are members of minority groups as subhuman, and the view of other citizens toward him, create the possibility of a violent confrontation, as racist views elicit strong feelings. That is one reason why it is appropriate and lawful for his Probation Officer to question him about protest involvement.  And that is why it is appropriate and lawful to monitor his computer activity, and to prohibit him from possessing dangerous weapons.

It is, therefore, all the more important to ensure that he follow the supervised release conditions, which are designed to help Lloyd put his criminal past behind him.  His disdain for these conditions is evident, and after two rounds of violations, which occurred within months of

---

[3] The website page previously provided to the Court by letter is appended hereto as Government Exhibit 19.  It is a page from the website "DefenseDevices.com" advertising the "Push Knife Ace of Spades."  The web site states: "This little unit can do serious damage and is definitely not a toy.  Applied horizontally to the rib area can cause severe trauma.  Use for self defense only."

his release from custody, there appears to be scant possibility of bringing him into compliance. Rather, he has shown that he will attempt to get away with what he can.

The government thus sees no alternative but to sentence him to 22 months of imprisonment. His lack of compliance has made him nearly impossible to effectively supervise. The government has reviewed the letters submitted by the defendant regarding his mental health condition and request for treatment. It is respectfully suggested that the Court can recommend therapy for Lloyd while he continues to serve his period of incarceration, and the government agrees that mental health treatment after his release may benefit him. But, at this point, Lloyd has created a record of disregard for the law. A substantial sentence of incarceration is justified here, and the government asks the Court to impose such a sentence.

        Respectfully submitted,

        SOO C. SONG
        Acting United States Attorney

        s/ Stephen R. Kaufman
        STEPHEN R. KAUFMAN
        Assistant U.S. Attorney
        U.S. Post Office and Courthouse
        700 Grant Street, Suite 4000
        Pittsburgh, Pennsylvania 15219
        (412) 894-7377 (Phone)
        (412) 644-2644 (Fax)
        Steve.Kaufman@usdoj.gov
        PA ID No. 42108